# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 18, 2000 Session

## JOSEPH WHITWELL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-D-2559     Cheryl Blackburn, Judge**

---

**No. M1999-02493-CCA-R3-PC - February 23, 2001**

---

Petitioner, Joseph Whitwell, filed a Petition for Post-Conviction Relief in the Davidson County Criminal Court, which the post-conviction court subsequently denied. Petitioner challenges the denial of his petition, raising the following issue: whether the trial court erred in dismissing his Petition for Post-Conviction Relief, based upon a ruling that Petitioner's allegations of ineffective assistance of counsel were without merit. After a thorough review of the record, we find that the Petitioner did not receive the ineffective assistance of counsel. We therefore affirm the trial court's denial of the Petitioner's Petition for Post-Conviction Relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Larry B. Felts, Nashville, Tennessee, for the appellant, Joseph Whitwell.

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Roger Moore, Assistant District Attorney General; and Sarah Carran Daughtrey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

On December 17, 1998, Petitioner entered a best interest plea of guilty to theft of property over $1,000 but less than $10,000 (Class D felony) and received a two-year and one month sentence, to be served consecutively to a sentence for which his parole had been revoked. On May 29, 1999, Petitioner filed a Petition for Post-Conviction Relief. Counsel was appointed to represent Petitioner. Following a hearing, the post-conviction court denied the petition, entering its written findings of fact and conclusions of law on October 12, 1999. Subsequently, on November 22, 1999, Petitioner filed an untimely notice of appeal. This court may waive the time requirement for filing a notice of

appeal "in the interest of justice." Tenn. R. App. P. 4(a); see State v. Scales, 767 S.W.2d 157 (Tenn. 1989). The untimely filing by the petitioner has not prejudiced the state; therefore, we waive this requirement in the interest of justice. See State v. Mullins, 767 S.W.2d 668, 669 (Tenn. Crim. App. 1988). Accordingly, we will address the merits of the petition.

## II. Post-Conviction Hearing

The post-conviction hearing occurred on September 15 and on September 29, 1999. Petitioner's proof consisted of his testimony and the testimony of Lela Shewmaker. The State's only proof was the testimony of Petitioner's trial counsel.

Petitioner testified that he filed the instant petition based upon the ineffective assistance of counsel. The Petitioner argues that he told his counsel that he did not steal the car and that, if counsel had contacted Petitioner's witnesses, they would have corroborated Petitioner's innocence. Petitioner gave his counsel a list of witnesses, along with the phone number or address he had for each witness. On December 17, 1998, Petitioner met with his counsel for their first discussion. Petitioner claims that, at that time, counsel told Petitioner that Petitioner's witnesses were unreliable. Petitioner also stated that his lawyer drew a graph, on the back of a file, which showed Petitioner what sentence he might receive at a possible trial. Petitioner testified that, because he understood his witnesses to be unreliable and his chances of success at trial to be slight, he decided to take the advice of his attorney and enter a best interest plea.

Petitioner further testified that he later learned from his mother that an insurance company tried to contact him regarding the stolen car. Petitioner also learned that the insurance company had a fraud claim pending against the victim and owner of the car stolen by the Petitioner. Petitioner also discovered that the insurance company had contacted many of the same witnesses, whose names had been on the list given to his counsel. Upon learning this new information, Petitioner immediately filed a Petition for Post-Conviction Relief.

Finally, Petitioner acknowledged that, on the date of his plea bargain, he agreed to the plea, and he signed all of the necessary forms. Petitioner also acknowledged that he was under oath that day, and remembered telling the judge accepting the plea that he was satisfied with trial counsel's performance. Petitioner further stated that, if his counsel had not misled him, he would have taken his case to trial.

The Petitioner also presented the testimony of Lela Renee Shewmaker. Shewmaker testified that she and Petitioner had been neighbors before Petitioner's arrest. Shewmaker stated that, shortly after Petitioner's arrest, Dawn Maddox (the owner of the car stolen by Petitioner) came to her home and told Shewmaker that she had allowed Petitioner to borrow her car and that Petitioner had wrecked the car. Shewmaker testified that Dawn Maddox told her that, should anyone from an insurance company inquire about the car incident, Shewmaker should deny knowing anything about the incident. However, Shewmaker stated that, before Maddox came to her house, she had no knowledge of Petitioner borrowing the car or wrecking the car.

Shewmaker further testified that she had received several phone calls regarding the car, including a call from an insurance company. She told the insurance company what Dawn Maddox told her. However, Shewmaker did not recall receiving a phone call from Petitioner's lawyer. Not long after Petitioner's arrest, Shewmaker received a phone call from him, during which Petitioner told her he did not steal the Maddox's car. Shewmaker replied to Petitioner that she knew he had not stolen the car, because Maddox told Shewmaker that she had given the car keys to Petitioner. Shewmaker stated that, if someone had subpoenaed her, she would have testified to these facts.

From Shewmaker's testimony, it is apparent that this phone conversation took place prior to Petitioner's "best interest" plea of guilty, and the post-conviction court so found in its findings of fact.

The State's only evidence was the testimony of Petitioner's trial counsel. He testified that he met Petitioner on September 1, 1998, during the felony jail docket. Counsel interviewed Petitioner that day and Petitioner told counsel that he did not steal the car. Petitioner told his lawyer that Dawn Maddox, the owner, had allowed him to borrow the car. While Petitioner was in possession of the car, he had a wreck. The car was towed back to Dawn Maddox's home, but no one had the sixty dollars to pay for the towing, so the wrecker towed the car to a lot. On that same day, counsel also received the names of Pam Warden, Kevin Bush, John Warden and Jessica Goodman, who were waiting in the gallery of the courthouse. Pam Warden told counsel that the victim had allowed the Petitioner to borrow the car. Warden also told Petitioner's counsel that Petitioner had been involved in a head-on collision with her, but that the insurance would not cover the loan, so the owner had to take out a warrant against Petitioner, in order for the insurance to pay for the wrecked car. Counsel did not speak with any of the other witnesses waiting in the gallery or with any of the other witnesses provided by the Petitioner.

Counsel testified that Petitioner contacted him three times by letter. In the first and third letters, Petitioner provided the names of possible witnesses, along with Petitioner's version of the events surrounding the vehicle. In the second letter, Petitioner expressed his frustration with counsel's representation. Petitioner accused counsel of not caring about his case and asked counsel not to wait to the last minute to work on his case. Petitioner threatened to file an ineffective assistance of counsel claim with the Board of Professional Responsibility.

Counsel further testified that he could not recall if he had time to investigate Petitioner's case or to interview Petitioner's witnesses. Yet, counsel testified it was not his practice to mislead someone into believing he had interviewed witnesses, when he had not. Counsel testified that he did not and would not say that the witnesses were unreliable, when he had not interviewed the witnesses. He also could not recall whether he discussed Petitioner's trial options, but said it was his practice to discuss such options with a client. He recalled no verbal expressions of dissatisfaction from the Petitioner, but he knew from Petitioner's letters that Petitioner was unhappy with his representation. Over all, counsel could not remember what was said during his limited conversations with the Petitioner. However, he stated that he would never force a client to accept a guilty plea. Counsel

testified that the original offer the State presented to Petitioner was four years, the next offer was three years at thirty-percent and the final offer was the two years and one month at thirty percent consecutive to Petitioner's parole violation (which Petitioner accepted). Counsel stated that, if Petitioner had totally rejected any plea offer, then he would not have gone forward with plea negotiations, but would have investigated further and taken the case to trial.

At the conclusion of the hearing, the post-conviction court denied Petitioner's Petition for Post-Conviction Relief and announced certain findings of fact. The Court subsequently entered an order reflecting its decision, including its findings of fact. In its findings, the trial court accredited the testimony of the Petitioner's trial counsel. The trial court found the trial counsel's testimony to be more credible than the Petitioner's, and therefore concluded that Petitioner had not established that his counsel's representation was constitutionally deficient. The trial court further found that there was no evidence as to whether Petitioner ever told his counsel about the conversation he had with Ms. Shewmaker, and therefore counsel had no knowledge of the conversation. The post-conviction court also gave weight to the fact that Petitioner entered his best interest plea of guilty on the first day that his case was set for discussions with the State. Thus, the court found that "the petitioner entered the plea in his best interest after assessing the circumstances and the State's offer in spite of his position that he was not guilty of the crime and had witnesses who might support his position." The post-conviction court concluded that the Petitioner had not met his burden of establishing the allegations presented in his petition.

### III. Analysis

Petitioner contends that, but for his trial counsel's ineffective assistance, he would not have entered a "best interest" plea of guilty to charges of theft of property.

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S .W.2d 417, 419 n. 2 (Tenn. 1989). When a petitioner claims that ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. See Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998) (quoting Hill v. Lockhart, 464 U.S. 52, 59, 106 S. Ct. 366, 370 (1985)).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491

F .2d 687, 696 (6th Cir. 1974) and <u>United States v. DeCoster</u>, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973).  Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065; <u>see</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner has the burden in the trial court to prove by clear and convincing evidence the factual allegations that would entitle him to relief.  Tenn. Code Ann. § 40-30-210(f).  On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings.  <u>See</u> <u>Black v. State</u>, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).  In this respect, the petitioner, as the appellant, has the burden of illustrating how the evidence preponderates against the judgment entered.  <u>Id.</u>  However, we review the trial court's conclusion regarding the effectiveness of counsel de novo because it involves a mixed question of law and fact. <u>See</u> <u>State v. Burns</u>, 6 SW 3d 453, 461 (Tenn. 1999).

In the case <u>sub judice</u>, the trial court found that defense counsel had adequately investigated the case against Petitioner.  The court further noted that despite Petitioner's allegations, Petitioner was well aware of the circumstances involved in his case and the possible sentence he faced. Petitioner, decided that it was in his "best interest" to plead guilty, rather than insist that counsel contact Shewmaker or any of the other witnesses, in order to prove his alleged innocence.  Therefore, we find that the record supports the findings and conclusions of the post-conviction court, that Petitioner failed to show that he was entitled to relief.

## IV. Conclusion

Because Petitioner has failed to present any evidence that would preponderate against the findings of the trial court, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE